# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BK ENTERTAINMENT GROUP, INC., | Civil Action No. 11-6432 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| DAVID BENDETH, | |
| Defendant. | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion by Defendant David Bendeth for summary judgment. (Docket Entry 26) Plaintiff BK Entertainment Group, Inc. ("BK") has opposed the motion. (Docket Entry 29) The Court has considered the parties' submissions and opts to rule without oral argument. See Fed. R. Civ. P. 78. For the reasons discussed below, this Court will grant the motion in part and deny it in part.

**I.  FACTUAL BACKGROUND**

This case arises out of a dispute between Defendant David Bendeth, a music producer, and his former manager, Plaintiff BK. Bendeth, who has worked with a number of commercially successful artists such as Papa Roach, Paramore, and Breaking Benjamin, was managed by Moir-Marie Entertainment ("MME") from 1998 to 2005. During that time, Bendenth had a day-to-day working relationship with MME employee Bennett Kaufman. MME was owned and operated by Steve Moir and Lisa Marie, who were also romantically involved. In 2005, the couple split up

and ended their business relationship. In June 2005, Kaufman left MME and established his own management company, BK Entertainment, and Bendeth agreed to join as a client.

BK and Bendeth never formalized their agreement in writing, and the parties now dispute the terms of their oral agreement. Under BK's version of events, Kaufman sent Bendeth a draft written contract in late June or early July 2005. Bendeth objected to a provision that would have required him to pay BK commissions on work done by a production company he owned called Type A Records. Kaufman then sent Bendeth a revised draft in mid-July 2005 that excluded commissions for Type A projects but included a term requiring Bendeth to pay BK a 15% commission, in perpetuity, on the gross revenues Bendeth earned on projects he worked on while BK served as his manager. In exchange, BK was to manage Bendeth's career as a record producer, songwriter, recording engineer, mixer, and arranger.

Bendeth denies he ever orally agreed to the terms of the second draft agreement. Bendeth insists that he refused to sign the second draft agreement, because he objected to paying a commission on his songwriting/publishing royalties and the perpetual commissions provision. Bendeth contends that the parties only agreed that BK would find Bendeth new projects, negotiate deal memos and agreements, review Bendeth's royalty statements for accuracy, and ensure that Bendeth was properly paid. In exchange, Bendeth would pay BK a commission on his producer royalties only as long as the agreement was in effect.

The parties operated under their oral agreement from 2005 until March 14, 2008, at which point Bendeth terminated the agreement. The parties agree that Bendeth had the right to terminate the contract on 30 days notice. For several months after termination, Bendeth continued to make payments to BK. Bendeth ceased making payments in December 2008.

BK filed this lawsuit, asserting claims of breach of contract and unjust enrichment and seeking payment of commissions on royalties and other revenue Bendeth received in connection with the sales of records he produced during the time BK served as his manager.

## II. DISCUSSION

### A. Jurisdiction

This Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332(a)(1). BK is a California corporation with its principal place of business in Sherman Oaks, California; Bendeth is a New Jersey citizen; and the amount in controversy exceeds $75,000.

### B. Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

B.   **Statute of Frauds**

Bendeth moves for summary judgment on BK's breach of contract claim on the grounds that enforcement of the oral agreement is barred by the California statute of frauds. BK appears to suggest, half-heartedly, that resolution of the statute of frauds question may be controlled by New Jersey rather than California law. But the written contract BK claims Bendeth orally agreed

4

to contains a choice of law provision expressly stating that "[t]his agreement shall be construed and interpreted under and in accordance with the laws of the State of California." The Court will therefore apply California law.

In California, agreements that, by their terms, are "not to be performed within a year" of their making or are "not to be performed during the lifetime of the promisor" are unenforceable "unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent[.]" Cal. Civ. Code § 1624. Bendeth argues that the oral agreement described by BK could neither be performed within a year nor performed during Bendeth's lifetime, since it calls for payments "in perpetuity."

Bendenth analogizes this case to Tostevin v. Douglas, 160 Cal. App. 2d 321 (1958), and argues that an agreement is within the statute of frauds because "where payment is to continue along with continuous exploitation of a work . . . the parties must have contemplated the continued performance of the contract would last more than one year . . . ." (D.'s Mov. Br. 12) In Tostevin, the defendants had employed the plaintiff, pursuant to an oral agreement, to solicit and procure personnel and material for a series of travelog television shows, 160 Cal. App. 2d at 323-24, and no definite time for performance was stated, id. at 328. The defendants repudiated the agreement, and plaintiff sued to recover on the oral agreement. Id. at 323-24. The California appellate court held that since payments were "to continue so long as the program was broadcast throughout the world, the parties must have contemplated that the continued performance of the contract was to last more than one year from the date of making, as indeed it did." Id. at 328. BK argues that Bendeth's reliance on Tostevin is misplaced, because application of the statute of frauds does not turn on "what the parties must have contemplated," id., but rather what was

*possible* at the time of formation.

A review of the case law makes clear that California interprets its statute of frauds narrowly. 1 Witkin, Summary of California Law, § 363 (10th Ed. 2005). There is some support in the case law for the view that the subjective intent of the parties is relevant to deciding a statute of frauds question. See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 675 n. 18 (1988). But the great weight of authority shows that Courts employ an objective, not subjective analysis. In other words, California does not look to what was in the minds of the contracting parties – what was "contemplated" at the time of contract formation – but instead what was, under the terms of the agreement, possible at the time of formation. See White Lighting Co. v. Wolfson, 68 Cal. 2d 336, 343 (1968) (§ 1624(a)(1) "applies only to those contracts which, by their terms, cannot possibly be performed within one year."); Foley, supra, 47 Cal. 3d at 673.

Bendeth argues that he could not possibly have performed under the contract within a year, because BK asserts that he was obliged to make commission payments in perpetuity, meaning "forever." (D.'s Mov. Br. 12) BK counters that since the contract allowed for either party to terminate the contract on 30 days notice, it was possible that the contract could have been terminated before any rights to perpetual payments vested in BK, and the contract thus falls outside the statute of frauds. Although a majority of states hold that an election to terminate at will does not take a contract outside the statute of frauds, "California follows the minority rule that the election to terminate takes the contract out of the statute." Witkin, supra, § 367 (citing White Lighting, supra, 68 C.2d at 344; Plumlee v. Poag, 150 C.A.3d 541, 550 (1984)). Since it is undisputed that both parties had the right to terminate the contract with 30 days notice, the contract could have been terminated before BK performed any work that would have triggered

Bendeth's duties to pay the 15% commission in perpetuity. As such, the Contract is not barred by § 1624(a)(1).

The statute of frauds also does not apply for another reason: at the time the agreement was formed, it was possible that Bendeth would not work on or complete any projects during the relationship, and Bendeth's obligation to pay BK a commission never would have arisen. Bendeth argues that such reasoning eviscerates the statute of frauds. "If a purported oral agreement that requires a party to perform its obligations in perpetuity does not violate the California statute of frauds, then no oral agreement could ever violate the statute of frauds." (D.'s Reply Br. 4) But that is not so. An oral agreement imposing a mandatory duty to deliver goods in two years would violate the statute as long as no provision was made for early termination. If this cramped construction of the statute seems like shabby treatment of a once proud common law doctrine, Bendeth's fight is with the California courts, who, for policy reasons, construe the statute of frauds narrowly. See Sunset-Sternau Food Co. v. Bonzi, 60 Cal. 2d 834, 838 (1964) (stating that, when the reach of the statute of frauds is unclear, the Court should not resolve the ambiguity in favor of its application).

Bendeth also argues that the agreement is unenforceable under § 1624(a)(5), which requires contracts "not to be performed during the lifetime of the promisor" to be supported by a signed writing. But California courts apply the same test to both provisions. See Roy v. Salisbury, 21 Cal. 2d 176, 182 (1942) (noting that "the wording of the two provisions is identical except as to the period of time involved" and holding that an oral agreement was outside the statute because the contract "could be performed within the lifetime of decedent"). Here, the agreement could be performed in Bendeth's lifetime for the same reasons it could be performed

7

within a year.

Because the California statute of frauds does not bar enforcement of the alleged oral agreement, summary judgment on the breach of contract claim will be denied.

**C.    Unjust Enrichment**

The Court next considers Bendeth's motion for summary judgment on BK's unjust enrichment claim.

A plaintiff suing for unjust enrichment does not sue on the contract. See Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App. Div. 1966). Rather, the claim "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Goldsmith v. Camden Cnty. Surrogate's Office, 408 N.J. Super. 376, 382 (App. Div. 2009). Because the agreement offered by BK does not govern the unjust enrichment claim, the Court must first decide whether New Jersey or California law governs.

A federal district court sitting in diversity must apply the choice of law rules of the state in which it sits. J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 360 (3d Cir. 2004). Under New Jersey choice of law rules, "the first step is to determine whether an actual conflict exists." P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008). Where there is no actual conflict, New Jersey courts apply New Jersey law. In this case, no party has argued that there is a conflict between New Jersey and California unjust enrichment laws. "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006) (citing Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc., 280 N.J. Super. 391 (App. Div. 1995)).

8

To recover under the doctrines of quantum meruit or unjust enrichment "a plaintiff must establish: (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002) (internal quotations omitted). Bendeth has moved for summary judgment on the unjust enrichment claim on the grounds that BK has failed to offer evidence establishing the reasonable value of its services.

Bendeth emphasizes that BK has failed to provide any invoices or evidence regarding the amount of time BK provided its services, the dates of service, and what precise services were provided. According to Bendeth, BK relies exclusively on the alleged 15% commission provision of the disputed contract, essentially making BK's unjust enrichment claim a backdoor attempt to recover on the contract. Bendeth argues that the evidence shows that BK has already been compensated in excess of the reasonable value of its services. In opposition, BK argues that the lack of invoices and records of hours spent managing Bendeth is immaterial, because BK was compensated strictly on commission and was never paid by Bendeth on a daily or hourly basis. According to BK, where a plaintiff has provided a commission-based service, the unjust enrichment analysis must account for that payment arrangement, and the difference between the contract rate and the actual rate of payment is probative evidence.

The Court is persuaded that BK has failed to offer sufficient evidence for a jury to determine the reasonable value of its services. BK relies almost exclusively on the commission in the disputed contract, but the essence of an unjust enrichment claim is that the asserted contract cannot be enforced. While the contract price may indeed be *relevant* to establishing the

9

reasonable value of services, a plaintiff does not satisfy its burden merely by pointing to the contract price, and the Court is unimpressed with what more BK has offered.

BK argues that it provided Bendeth with career guidance, including making business introductions, cultivating relationships, identifying and planning career objectives, negotiating deals, scheduling, and assisting with budgets. But even assuming BK performed all of those duties admirably, BK has offered no evidence of what these services were *worth* or, put another way, the extent of the benefit conferred. Instead of offering such evidence, BK appears to rely on a valuation based on the disputed 15% commission. BK argues that it is standard industry practice for managers of record producers to get paid on a commission basis, in perpetuity, on all royalties generated by projects the producer substantially completed during the time the producer was a client. But even if true, that general fact about the typical structure of industry contracts does nothing to demonstrate that a perpetual 15% commission is a reasonable valuation of the services BK provided to Bendeth. BK could have offered expert testimony on the subject but did not. Moreover, BK points to no evidence establishing a nexus between the work it performed and the projects for which it seeks commissions. The disputed commissions arose out of royalties Bendeth earned from his work on three albums: *Phobia* by Breaking Benjamin, *And Don't You Fake It* by The Red Jumpsuit Apparatus, and *Riot!* by Paramore. Significantly, BK has not cited to any evidence that it played any role in procuring that work, and Bendeth asserts that all three projects came to him directly. The Court therefore finds that there is no genuine dispute of material fact and that Bendeth is entitled to judgment as a matter of law on BK's unjust enrichment claim. See Fed. R. Civ. P. 56(a).

III. CONCLUSION

For the foregoing reasons, the Court will grant Bendeth's motion for summary judgment in part and deny it in part. An appropriate order accompanies this Opinion.

<pre>
                                         s/ Stanley R. Chesler
                                       STANLEY R. CHESLER
                                       United States District Judge
</pre>

DATED: July 22, 2013